_____



**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: September 14, 2018**

**The Order of the Court is set forth below. The docket reflects the date entered.**
_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

IN RE:

| | |
|---|---|
| **ROGERS BENJAMIN MORRIS,** | **CASE NO. 18-10964-NPO** |
| **DEBTOR.** | **CHAPTER 12** |

**MEMORANDUM OPINION AND ORDER**
**<u>DENYING CONFIRMATION OF CHAPTER 12 PLAN</u>**

This matter came before the Court for confirmation hearing on August 30, 2018 (the "Hearing"), on the Chapter 12 Plan (the "Plan") (Dkt. 36) filed by the debtor, Rogers Benjamin Morris (the "Debtor"); the Trustee's Objection to Confirmation (the "Trustee's Objection") (Dkt. 46) filed by the trustee, Harold J. Barkley, Jr. (the "Trustee"); and the Objection to Confirmation of Chapter 12 Plan [#36] (the "USDA Objection") (Dkt. 51) filed by the United States Attorney, William C. Lamar, on behalf of the Farm Service Agency ("FSA") and the Commodity Credit Corporation ("CCC"), agencies within the United States Department of Agriculture ("USDA"), in the above-referenced bankruptcy case. At the Hearing, Susan C. Smith represented the Debtor, Justin Jones represented the Trustee, and Samuel D. Wright appeared on behalf of the United States Attorney. This Opinion resolves the dispute with respect to the Trustee, FSA, CCC, and the USDA and does not address any of the other objections to the Plan, which will be or have been resolved

by a separate agreed order. The Court, having considered the pleadings and arguments of counsel, finds that the Plan is not feasible for the reasons set forth below.[1]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Notice of the Hearing was proper under the circumstances.

## Facts

1. On March 14, 2018, the Debtor filed a petition for relief under chapter 12 of the United States Bankruptcy Code (the "Code"). (Dkt. 1).

2. On June 12, 2018, the Debtor filed the Motion to Extend Time to File Plan (Dkt. 21), and the Court issued the Order Extending Time to File Plan (Dkt. 25).

3. On July 26, 2018, the Debtor filed the Plan.

4. On August 8, 2018, CCC filed the amended Proof of Claim in the amount of $31,223.11 secured by real estate and a grain bin. (Bankr. Cl. 12-2).

5. On August 9, 2018, FSA filed the Proof of Claim in the amount of $238,787.93, with $187,742.58 secured by real estate and farm equipment and the remaining $51,045.35 unsecured. (Bankr. Cl. 16-1).

6. On August 16, 2018, the Trustee filed the Trustee's Objection, asserting (1) that the Plan proposes annual plan payments for a duration of 4.5 years; (2) that the Plan proposes to pay the Trustee's fees in a manner that is inconsistent with 28 U.S.C. § 586; (3) that the Trustee, as opposed to the Debtor, should determine the amount necessary to fund the Plan; (4) that all

---

[1] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

proposed payments to secured creditors with altered debts should be paid through the Plan; and (5) that the Plan proposes to use an adjustable rate of interest tied to the "Wall Street Journal Prime Rate" and not the presumptive rate of six percent (6%). (Dkt. 46).

7. On August 21, 2018, the USDA filed the USDA Objection, asserting (1) that the Plan incorrectly states the amount of CCC's claim and fails to address and provide for the delinquency existing on CCC's loan; (2) that the Plan incorrectly states the amount of FSA's claim and fails to address and provide for the delinquency existing on FSA's loan; and (3) that the Plan does not comply with 11 U.S.C. § 1225[2] and, thus, is not feasible and cannot be confirmed. (Dkt. 51).

## Discussion

The main objection to the confirmation of the Plan is feasibility. In determining feasibility, the court must "analyze the debtor's proposed plan payments in light of the debtor's projected income and expenses . . . to determine [whether] the debtor is likely to be able to make all payments required by the plan." 8 COLLIER ON BANKRUPTCY ¶ 1225.02[5] (16th ed. 2018). Indeed, § 1225(a)(6) provides that "the court shall confirm a plan if . . . the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). To satisfy the feasibility test, the debtor must submit to the court "sufficient evidence with regard to the debtor's projected income and expenses to enable the court to determine that the debtor can make all of the payments called for by the plan." 8 COLLIER ON BANKRUPTCY ¶ 1225.02[5]. Sufficient evidence for farming operations typically includes "a monthly cash flow showing the timing of receipts and expenditures and indicating the debtor's ability to service the debtor's anticipated operating

---

[2] Hereinafter, all code sections refer to the Code found at Title 11 of the United States Code, unless otherwise noted.

expenses and to make the required plan payments." *Id.* In examining income projections, the court should determine whether the projections "are consistent with the debtor's prepetition performance" and whether the Plan contains reasonable assumptions. *See id.* Additionally, the court should consider "the farms's earning power, capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the farm." *In re Tate*, 217 B.R. 518, 520 (Bankr. E.D. Tex. 1997) (citing *FHA v. Rape (In re Rape)*, 104 B.R. 741, 749 (Bankr. W.D.N.C. 1989)).

At the Hearing, the Debtor testified that he has experience farming soybeans, peas, corn, and wheat. Currently, the Debtor is farming soybeans, peas, and wheat but not corn. In any given year, the Debtor's farming operation grosses approximately $200,000.00, including subsidy programs, and approximately $160,000.00, excluding subsidy programs.[3] The Debtor's annual cost to produce his crops is approximately $80,000.00, and the Debtor pays approximately $23,000.00 each year to lease his farmland and approximately $8,000.00 for crop insurance and homeowner's insurance each year.[4] In the Plan, the Debtor proposes "a modification of the total amount owed to FSA at twenty (20) years at the *Till* rate of six percent (6%) . . . that will cost [the Debtor] approximately $19,100.00 per year."[5] Additionally, the Debtor proposes to pay CCC annual installments of $6,244.62 at a rate of interest of three percent (3%). (Dkt. 36). With respect to the debt owed to Mississippi Land Bank, the Debtor testified that he will pay the bank through

---

[3] Test. of Debtor at 11:35:15 – 11:36:15. The Hearing was not transcribed. References to the argument and testimony presented at the Hearing are cited by the timestamp of the audio recording.

[4] Test. of Debtor at 11:36:16 – 11:36:27 & 11:37:31 – 11:37:54.

[5] 11:36:27 – 11:36:53.

the Plan in an amount of $6,000.00 per year.[6] Finally, the Debtor anticipates paying approximately $6,000.00 in taxes each year.[7] After accounting for the aforementioned expenses plus the Trustee's fees, the Debtor testified that he will retain an annual income of approximately $15,000.00 to provide for himself and his wife. The Debtor further testified that he and his wife also receive social security income and that this amount plus the Debtor's retained earnings from his farm operation sustains their basic necessities and living expenses. When asked if he plans to farm for the next twenty (20) years, which is the length of the proposed extension of the loans owed FSA, the Debtor testified that while he is seventy-two (72) years old, he expects he will be able to do so and that he has a son "who will hopefully takeover" his farming operation if necessary.[8]

On cross-examination by the USDA, the Debtor acknowledged that while he has borrowed money from the USDA since the 1970's, he has yet to pay timely a loan in full. Indeed, the USDA has rescheduled each loan the Debtor has received from it to fund his farming operation. The Debtor further testified that the USDA's most recent loan rescheduling occurred in 2010. Since then, the Debtor has made two (2) payments to the USDA on or before the payment due date, both of which occurred in 2013. The Debtor has not made any payments to the USDA in 2018.

When asked how his farming operation will differ from previous years to enable him to make payments to the USDA, the Debtor testified that "several things are going to happen," such as changing soybean varieties, improving equipment, engaging in more frequent irrigation, and

---

[6] Test. of Debtor at 11:36:57 – 11:37:11.

[7] Test. of Debtor at 11:37:12 – 11:37:29.

[8] Test. of Debtor at 12:12:18 – 12:12:24.

planting crops earlier.[9] While more frequent irrigation will increase the Debtor's operating expenses, the Debtor stated that "the benefits will outweigh the costs."[10]

With respect to this year's crops, the Debtor has faced some difficulty with his pea crop and expects about a $3,000.00 – $5,000.00 decrease in revenue. The Debtor does not anticipate this setback to impact significantly his projected gross income because he is expecting a considerable increase in soybean yields. The Debtor testified that he already has booked 5,500 – 6,000 soybean bushels at $9.90 – $10.20 per bushel and that he expects to receive $150,000.00 in revenue from his remaining soybean crop. The Debtor's wheat crop "was very short" due to flooding, but insurance proceeds helped to offset the loss. Additionally, the Debtor anticipates being able to apply for government stimulus funds to help offset losses resulting from tariffs that have been imposed on soybeans.

At the close of the Hearing, the Trustee recommended confirmation of the Plan. The Court, however, finds that the Debtor did not meet his burden of proof as to the feasibility of the Plan, as illustrated by the effective cross-examination of the Debtor by the USDA. While a debtor "should be given the benefit of the doubt regarding the issue of feasibility when the debtors [*sic*] plan projections—using reasonable inputs in light of the current economic climate—indicates that it is reasonably probable that [the] debtor can satisfy the plan payments," the court also "must be persuaded that it is probable that a plan will be able to cash flow based upon realistic and objective facts (as opposed to visionary or overly optimistic projections)." *In re Tate*, 217 B.R. at 520. Here, the Debtor testified that his farm operation grosses approximately $200,000.00, including subsidies, in a given year. Other than this blanket assertion, the Debtor provided to the Court no

---

[9] Test. of Debtor at 11:47:30 – 11:48:26.

[10] Test. of Debtor at 11:48:27 – 11:48:36.

evidence that this is a realistic projection. Indeed, this year the Debtor's pea and wheat crops faced unforeseen setbacks that will impact the Debtor's gross revenue. Assuming the Debtor receives $61,200.00 from his booked soybean bushels, it is unclear to the Court how the Debtor expects to receive an additional $150,000.00 from soybean sales.[11] The Debtor testified that he will apply for government stimulus funds, but the Court is unable to discern the amount the Debtor would receive in aid. Additionally, the stimulus package would provide assistance to the Debtor this year only. While the Debtor is certainly no stranger to the uncertainties associated with farming, he has provided no other evidence of a reserve to help offset unforeseen situations going forward. *See In re Snider Farms, Inc.*, 83 B.R. 1003, 1013 (Bankr. N.D. Ind. 1988) (finding that a chapter 12 plan lacked feasibility where "there [was] absolutely no margin of error built in for even minimal unforeseen expenses or reduced yields").

Further, the Debtor testified that he will have approximately $15,000.00 plus social security income to provide for himself and his wife in a given year after making his plan payments and funding his farm operation. Given the Debtor's history of being unable to make payments timely and the lack of evidence produced with respect to a reserve fund, the Court finds that this leftover amount is likely impracticable. The Debtor testified that he is going to improve his farming operation by engaging in more frequent irrigation and improving older equipment. While these are worthwhile proposals, they will undoubtedly come at a price that the Debtor has not shown he can afford. A court simply cannot confirm a plan based on the assertion that "the benefits will

---

[11] Currently, one bushel of soybeans is valued at $8.32, which is about $1.00 – $2.00 less than the amounts the Debtor will receive per bushel from his booked soybean crop. *See* MARKETS INSIDER, https://markets.businessinsider.com/commodities/soybeans-price.

outweigh the costs."[12] *See id.* at 1014 ("[T]he [c]ourt may not itself indulge in highly speculative and unduly optimistic assumptions.").

Finally, the only evidence that the Court, the Trustee, and the creditors had before it concerning feasibility was the oral testimony of the Debtor and the Plan. The Debtor did not provide any written cash flow statements or projections based on assumed yields, prices, and expenses where the Court could make an informed decision as to the Debtor's ability to fund the Plan. Once again, the burden of feasibility is on the Debtor, and "the Court need not try and prove the Debtor's case by sifting through a mass of unstructured figures to try and confirm a plan." *Id.* at 1015. No matter how sincere the Debtor's intentions, the amounts provided to the Court simply do not show that the Debtor has any reasonable chance of successfully carrying out his duties and obligations under the Plan. Accordingly, the Court finds that the Plan is not feasible and that confirmation of the Plan should be denied.

**Conclusion**

For the above and foregoing reasons, the Court finds that the Plan is not feasible. The Court further finds that confirmation of the Plan should be denied without prejudice. The Debtor should have twenty-eight (28) days to file an amended plan in accordance with this Opinion, and the Court will set a new objection deadline and will reset the confirmation hearing. At the reset confirmation hearing, the Debtor should provide to the Court exhibits supporting his testimony to aid in determining whether to confirm the amended plan. Finally, the Trustee should provide to the Court at the reset confirmation hearing a detailed recommendation as to whether the amended plan is feasible. To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined they would not alter the result.

---

[12] Test. of Debtor at 11:48:27 – 11:48:36.

IT IS, THEREFORE, ORDERED that the Trustee's Objection and the USDA Objection are hereby sustained, and the confirmation of the Plan is denied without prejudice.

IT IS FURTHER ORDERED that the Debtor shall file within twenty-eight (28) days from the date of this Opinion an amended plan consistent with the Opinion. The Court will set a new objection deadline and will reset the confirmation hearing.

IT IS FURTHER ORDERED that the Debtor shall provide to the Court at the reset confirmation hearing exhibits supporting his testimony to aid in determining whether to confirm the amended plan.

IT IS FURTHER ORDERED that the Trustee shall provide to the Court at the reset confirmation hearing a detailed recommendation as to whether the amended plan is feasible.

##END OF OPINION##