___



**SO ORDERED,**

*[signature: Selene D. Maddox]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: ROGERS MORRIS** | **CASE NO.: 18-10964-SDM** |
| **DEBTOR(S).** | **CHAPTER 12** |

### OPINION AND ORDER GRANTING MOTION
### FOR RELIEF OF AUTOMATIC STAY TO OFFSET

**THIS CAUSE** comes before the Court on the *Motion for Relief of Automatic Stay to Offset* (Dkt. #129) which was filed in the above-styled case. The Movant is the United States of America (the "Government"), represented by U.S. Attorney William C. Lamar and Assistant U.S. Attorney Samuel D. Wright who collectively represent the Commodity Credit Corporation ("CCC"), an agency within the U.S. Department of Agriculture ("USDA"). The Respondent is Rogers Morris ("Morris"), the Debtor in this case. The Court heard oral arguments on the motion on December 11, 2019 and directed the parties to submit simultaneous briefs in support of their positions. After reviewing the legal arguments and testimony, the Court is prepared to rule.

### I.  JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated

August 6, 1984.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)[1] (matters concerning the administration of the estate) and (G)(motion to terminate, annul, or modify the automatic stay).

## II. FACTS AND PROCEDURAL HISTORY

The underlying facts in this matter are undisputed. On July 7, 2017, Morris enrolled 4.61 acres of corn, 8.36 acres of soybeans, and 35.23 acres of long grain rice on Farm Number 3051 in a contract with the CCC, which provided for USDA Agricultural Risk Coverage ("ARC-CO") and Price Loss Coverage ("PLC"):

> The ARC-CO program provides income support tied to historical base acres, not current production, of covered commodities. ARC-CO payments are issued when the actual county crop revenue of a covered commodity is less than the ARC-CO guarantee for the covered commodity.
>
> PLC program payments are issued when the effective price of a covered commodity is less than the respective reference price for that commodity. The effective price equals the higher of the market year average price (MYA) or the national average loan rate for the covered commodity.

U.S. Dept. of Agriculture. *FRC-PLC Program.* https://www.fsa.usda.gov/programs-and-services/arcplc_program/index (last visited March 2, 2020).

In Program Year 2017, Morris enrolled the corn and soybeans in the ARC-CO program and the long grain rice in the PLC program. Pursuant to the contract, "[o]ffsets for debts owed to agencies of the U.S. Government shall be made prior to making any payments to participants or their assignees." Morris admitted during his testimony that he was aware of the offset provision when he entered into the contract.

Pursuant to the contract's terms, Morris was entitled to an ARC-CO/PLC payment for 2017 in the amount of $3,426.00. A check in that amount was issued but withheld pursuant to the offset

---

[1]Except where stated otherwise, all subsequent statutory references will be to Title 11 of the U.S. Code.

provision. The USDA now seeks relief from the automatic stay in order to exercise its right to offset the $3,426.00 against the $238,787.93 in prepetition debt which Morris owes to the Farm Service Agency ("FSA"), another agency within the USDA.

Morris, through counsel, concedes all of the above. His argument against granting the AUSA's motion is based on the fact that the motion was not filed until October 29, 2019, many months after the plan's confirmation on December 28, 2018. Morris's theory is that because the USDA participated in plan confirmation, allowing a postconfirmation offset would be inequitable both to him and to the other creditors in this case. Morris also argues that the Government waived its setoff rights by resolving its objections to Morris's Amended Plan, thereby allowing confirmation to proceed.

### III. DISCUSSION

"Set off," within the context of bankruptcy law, refers to the practice of allowing a creditor to offset a debt it owes to a debtor in bankruptcy against a claim it has against the same debtor, so long as both debts arose prior to the commencement of the bankruptcy case. *In re De Laurentiss Ent. Group, Inc.,* 963 F.2d 1269, 1274 (9th Cir. 1992)("Thus, if the debtor and the creditor each owed the other $20, they could set those debts off against each other, rather than attempting to collect from each other.") The Bankruptcy Code explicitly states that, except for certain exceptions not germane to this case:

> this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553.

The Bankruptcy Code does not create any right to setoff but merely preserves the right where it exists under applicable nonbankruptcy law. *In re Whitaker*, 173 B.R 359, 361 (Bankr.

S.D. Ohio 1994). In order to establish a valid setoff right under § 553, the Government must prove: (1) the debt owed by the creditor to the debtor arose prepetition; (2) the claim of the creditor against the debtor arose prepetition; and (3) the debt and claim must be mutual obligations. *In re Luongo*, 259 F.3d 323, 334 (5th Cir. 2001). Each of these elements is easily met in this case. Based on the pleadings and the facts presented at the hearing, Morris's debt in the amount of $238,787.93 and the $3,426.00 ARC-CO/PLC payment both arose before the commencement of the case. Further, the debts at issue involve the same parties, i.e. Morris and the Government, standing in the same capacity.

Morris, however, does not challenge whether the Government has a right to setoff in general. Rather, he presents the following arguments for why the Government should not be allowed to exercise that right: (1) that the Government cannot assert its setoff rights post-confirmation, (2) that the Government waived its rights to setoff by waiting approximately ten months after confirmation to file its motion, and (3) that the Government's actions were "inequitable." The Court will address each of these arguments in turn.

**A.     The Government's Setoff Right Survives Confirmation**

With regard to Morris's first argument, the Court notes that there is a split among the circuits (and courts that sit within those circuits) as to whether a creditor may pursue setoff post-confirmation at all. The Court also agrees with Morris that there is no controlling Fifth Circuit precedent on this specific point.

The conflict arises from the tension between § 553 and other Bankruptcy Code provisions and legal principles which would seem to terminate the otherwise absolute right to setoff upon confirmation. In *In re Lykes Bros. S.S. Co. Inc.*, the court concluded that a Chapter 11 plan was a final order, and thus, the doctrine of res judicata precludes a creditor from asserting setoff rights

postconfirmation. 217 B.R. 304, 310 (M.D. Florida 1997). Similarly, in *In re Continental Airlines*, the court held that any right to setoff in a Chapter 11 case "must be exercised by the creditor in a timely fashion" and that § 553 was trumped by § 1141 which vests all property of the estate in the debtor free and clear of liens upon confirmation. 134 F.3d 536, 540-42 (3d Cir. 1998)("[T]he right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim").

While the rule that setoff rights do not survive confirmation appears to hold true for lower courts in the Second and Eleventh Circuits and the Third Circuit Court of Appeals, the *majority* rule articulated by lower courts in the Fourth, Sixth, Seventh, and Eighth Circuits and the Ninth and Tenth Circuit Courts of Appeals appears to be the opposite. *U.S. v. Munson*, 248 B.R. 343, 345 (C.D. Ill. 2000). The seminal case for this position is *In re De Laurentiis Ent. Group, Inc. ("De Laurentiis")*, 963 F.2d 1269 (9th Cir. 1992). There, the Ninth Circuit Court of Appeals interpreted the plain language of § 553 as controlling "notwithstanding any other provision of the Bankrutpcy Code." *De Laurentiis*, 963 F.2d at 1276-77. The *De Laurentiis* Court also concluded that:

> a contrary conclusion essentially would nullify section 553. Section 553 does not by itself create a right of setoff. Instead, it merely allows setoffs in bankruptcy to the same extent they are allowed under state law. If section 1141 were to take precedence over section 553, setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization. Section 553 would then be largely superfluous, since a setoff could be written into the reorganization plan even without section 553. A reading of section 553 which renders it meaningless should be highly suspect.

*Id.* at 1277. The Ninth Circuit noted that setoffs are "generally favored," and that there was a long-standing presumption in favor of enforcing setoff rights. *Id*. Finally, the *De Laurentiis*

Court noted that "the primacy of setoffs is essential to the equitable treatment of creditors," because a setoff is only allowable as a defense to a claim by the debtor against a creditor:

> Absent a setoff, a creditor in NBC's position is in the worst of both worlds: it must pay its debt to the debtor in full but is only entitled to receive a tiny fraction of the money the debtor owes it. It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place.

*Id.*

As noted above, the Ninth Circuit's position on this issue appears to be in line with the position taken by a majority of other courts. *See generally In re Whitaker*, 173 B.R. 359 (adopting *De Laurentiis* reasoning); *In re BOUSA Inc.*, 2006 WL 2864964 (Bankr. S.D.N.Y. Sept. 29, 2006) (confirmation does not bar setoff right absent plan provision expressly prohibiting it); *In re Ronnie Dowdy, Inc.*, 314 B.R. 182 (Bankr. E.D. Ark 2005)(confirmation of debtor's plan does not affect government's setoff rights); *In re Davidovitch*, 901 F.2d 1533 (10th Cir. 1990)(creditor could assert setoff right even postdischarge and even without filing proof of claim).

This Court joins with the majority of other courts to have considered this issue and holds that confirmation does not bar a subsequent and otherwise valid assertion of a creditor's setoff rights.

**B.     The Government Did Not Waive Its Setoff Rights**

Even in jurisdictions that permit setoff postconfirmation, a creditor can waive the right to setoff by acting or failing to act in a manner that reflects "a knowing, voluntary and intentional relinquishment of that legal right." *In re BOUSA, Inc.*, 2006 WL 2864964, at *4. One common circumstance under which courts have found creditors to have waived setoff rights is when the creditor actually made payments to the debtor on its own debt and then initiated a setoff action to recover them. *See generally In re Holder*, 182 B.R. 770, 777 (Bankr. M.D. Tenn 1995)(IRS waived setoff rights by entering into Agreed Order to allow debtor to use cash collateral that IRS had

previously sought for setoff); *In re Cloverleaf Farmer's Co-op*, 114 B.R. 1010, 1017 (Bankr. D.S.D. 1990)(Small Business Administration could not setoff funds it had already unconditionally disbursed); *In re Wilson*, 49 B.R. 19, 21 (Bankr. N.D. Tex. 1985)(Small Business Administration waived its right to setoff when IRS paid tax refund to debtor); *In re McCormick*, 1993 WL 2460001 (D. Kan. 1993)(CCC and FMHA waived setoff rights by sending partial payments to debtor).

Courts have also held creditors to have waived their setoff rights by failing to assert the right in a proof of claim. *See generally In re BOUSA, Inc.*, 2006 WL 2864964, at *4; *In re Lykes Bros. S.S. Co., Inc.,*, 217 B.R. at 312 ("The filing of a proof of claim without asserting a setoff right constitutes a waiver of that right."). *But see In re Davidovitch*, 901 F.2d at, 1539)("[F]iling of a proof of claim is not a prerequisite to assertion of a right to setoff").

Finally, some courts have held that a creditor waives setoff rights by failing to object to a confirmed plan that expressly bars future setoff actions. *Compare Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003)(no setoff where confirmed plan expressly bars setoff claims) *and In re Lykes Bros. S.S. Co., Inc.,* 217 B.R. at 309 (same) *with In re BOUSA, Inc.*, 2006 WL 2864964, at *6 (allowing setoff where confirmed plan does *not* address setoff rights).

In the case at bar, the Government submitted a proof of claim (POC #12-1 and amended POC #12-2) that expressly asserted, on the face of the proof of claim form, that the debt listed was subject to setoff. The Government also submitted a proof of claim (POC #16-1) that did not on its face expressly assert the right to set off. But the Government did attach the contract and security documents to POC #16-1, and these documents did contain the right of setoff. Further, unlike the cases cited above, the Government is not attempting to recoup any payments already made to Morris but instead held onto the check after it had been issued in anticipation of possible setoff.

Finally, the confirmed plan is silent on the issue of setoff distinguishing the facts before this Court from the facts in *Daewoo Int'l (Am.) Corp* and *In re Lykes*.

In support of his waiver argument, Morris relies on the fact that the Government waited ten months after confirmation to file its motion to lift stay. The Court has already concluded that it was not impermissible for the Government to wait until after confirmation to file its motion. And given the nature of agricultural disbursements which are typically made on an annual basis, the Court cannot agree that waiting ten months reflects "a knowing, voluntary and intentional relinquishment" of the Government's legal right to setoff. Accordingly, the Court finds that the Government did not waive its setoff rights.

**C.    Equitable Subordination Does Not Apply**

Finally, Morris argues that by invoking its setoff rights, the Government is seeking an unfair advantage over other creditors, which Morris characterizes as inequitable conduct that should be subject to equitable subordination. Morris appears to invoke § 510(c) which states:

> c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> >
> > (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510.

Under Fifth Circuit precedent, there are three elements which must be satisfied before a request for equitable subordination may be granted:

> (1) That the claimant engaged in some type of inequitable conduct;
> (2) That the inequitable conduct of the claimant resulted in injury to the creditors of the Debtor or conferred an unfair advantage on the claimant; and

(3) The equitable subordination of the claimant's claim is not inconsistent with the provisions of the Bankruptcy Code.

*In re Fabricators, Inc.*, 109 B.R. 186, 193 (Bankr. S.D. Miss. 1987), *aff'd sub nom. Fabricators, Inc. v. Tech. Fabricators, Inc.*, 126 B.R. 239 (S.D. Miss. 1989), *aff'd sub nom. Matter of Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1991)(citing test established in *In re Mobile Steel Company*, 563 F.2d 692 (5th Cir. 1977)).

The Court does not find equitable subordination to be proper in this case for several reasons. First, the only "inequitable conduct" which Morris alleges is that the Government exercised its setoff rights postconfirmation. The Court has already concluded that the Government was permitted to assert its setoff right postconfirmation. Second, Morris alleges that the Government has an unfair advantage because other creditors, namely unsecured creditors, could be potentially deprived of the setoff funds. The Court perceives no injury to the other creditors arising from the Government not providing funds to Morris that he conceded from the start were subject to setoff. Last, it is absurd to suggest that denying the Government its setoff rights is "not inconsistent with the provisions of the Bankruptcy Code" when § 553 expressly protects a creditor's setoff rights except for narrow exceptions not relevant to this motion. In short, the elements of equitable subordination have not been met.

### IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that (1) confirmation of Morris's Chapter 12 plan does not bar the Government from filing the instant *Motion for Relief of Automatic Stay to Offset*, (2) the Government did not waive its right to setoff, and (3) the Government did not engage in inequitable conduct such that equitable subordination should apply.

**ACCORDINGLY**, it is hereby **ORDERED** that the Government's *Motion for Relief of Automatic Stay to Offset* (Dkt. #129) is **GRANTED**, and the Automatic Stay is hereby lifted as to

the $3,426.00 previously withheld by the USDA so that it may be applied in its discretion against the pre-petition debt which Morris owes to the FSA.

##END OF ORDER##